IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CHAD ANTHONY LEWIS FOWLER                                                PLAINTIFF
ADC #656153

V.                        Case No. 3:22-CV-00253-LPR-BBM

JUSTIN B. BODEKER, *et al.*                                                      DEFENDANTS

## **RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.    INTRODUCTION**

On September 28, 2022, Plaintiff Chad Anthony Louis Fowler ("Fowler"), a prisoner in the Grimes Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Doc. 2). After the Court screened his Complaint in accordance with the Prison Litigation Reform Act ("PLRA"), Fowler was allowed to proceed with his claim of inadequate medical care against Defendants Dr. Justin B. Bodeker ("Dr. Bodeker"), Health Services

Administrator Sheila Armstrong ("HSA Armstrong"), and Dental Assistant Shelly Berg ("DA Berg") (hereinafter, "Defendants").[1] (Doc. 6).

On November 22, 2023, Defendants filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts. (Docs. 21–23). Defendants argue that, as a matter of law, Fowler cannot show that Defendants knew of, yet disregarded, Fowler's medical needs.[2] (Doc. 21 at ¶ 3). Fowler, in turn, filed a Motion for Verdict (Doc. 24) and a "Motion to Support Evidence in Briefing," which the Court construes as a Response to Defendants' Motion for Summary Judgment (Doc. 26).

Because Fowler did not file a Statement of Disputed Facts or otherwise respond to Defendants' Statement of Undisputed Facts, all of Defendants' facts are deemed undisputed. LOCAL RULE 56.1. Defendants did not file a reply, and the time for doing so has passed. LOCAL RULE 7.2(b). Therefore, the issues are properly joined and ready for consideration. For the following reasons, the Court recommends that Defendants' Motion for Summary Judgment (Doc. 21) be granted and Fowler's Motion for Verdict (Doc. 24) be denied.

## II.   FACTUAL BACKGROUND

On May 5, 2021, after Fowler was committed to the Ouachita River Unit of the ADC, a dental intake examination was performed by Dr. Susan McDonald, D.D.S., including panoramic x-rays. (Doc. 2 at 4; Doc. 23-2). During this initial examination,

---

[1] The Court denied Fowler's attempt to expand his claims to include additional constitutional violations that occurred *after* he filed the Complaint. (Doc. 16).

[2] No dispositive motions were filed on the issue of exhaustion of administrative remedies. (Doc. 14).

fillings were recommended for teeth #3, #6, #11, #13, #20,[3] #22, and #27. (Doc. 23-2). It was further recommended that teeth #4, #12, #21, #28, and #32 be extracted. *Id*. Fowler was informed that, if he desired further treatment, he should submit a request form. *Id.*

Fowler was later transferred to the Grimes Unit of the ADC. (Doc. 23-2). On May 27, 2021, Fowler saw Dr. Bodeker, complaining that three teeth were "giv[ing] him problems." (Doc. 23 ¶ 4; Doc. 23-3). He alleged that the pain had been ongoing for two to three months and that it was an eight out of ten. (Doc. 23-3). Dr. Bodeker examined teeth #6, #11, and #12, which Fowler indicated were causing him pain. Dr. Bodeker determined that teeth #6 and #11 appeared "marginally restorable." *Id*. Dr. Bodeker placed Fowler on the restorative list for teeth #6 and #11 and gave Fowler a prescription for 600 mg of Ibuprofen for twenty days. *Id.* Fowler alleges that the Ibuprofen did not help him with the pain. (Doc. 2 at 5).

Fowler submitted another sick call request on August 7, 2021, inquiring about how long it would take to get fillings and stating that his teeth continued to hurt and were affecting his ability to chew and swallow food. (Doc. 23-4 at 1). He was seen by Dr. Bodeker on August 18, 2021. (Doc. 23 ¶ 5). Although there were no signs of swelling, drainage, or acute infection noted during the examination, based on Fowler's description of his symptons, Dr. Bodeker added teeth #6 and #11 to Fowler's list of teeth to be extracted. *Id.* Fowler was once again prescribed Ibuprofen to help with the pain. *Id.*

---

[3] Defendants' Statement of Undisputed Facts notes that tooth #30 needed a filling; the Court believes this to be a scrivener's error. *Compare* (Doc. 23 at ¶ 3) *with* (Doc. 23-1).

On September 28, 2021, Dr. Bodeker extracted teeth #4, #6, #11, and #12. (Doc. 23-5). Fowler was given Ibuprofen again to help manage his post-operative pain. *Id.*

Fowler submitted a sick call request on October 9, 2021, stating, "Im currently having a problem chewing Ive only got three teeth on top of my mouth and need a partial." (Doc. 23-6) (errors in original). Two days later, DA Berg responded, "According to your dental chart, you have several teeth that requires [sic] fillings. Those will need to be done and you will need a year on your time once the fillings are completed before you will qualify for partials. Place a sick call asking for fillings." *Id.*

Fowler initiated grievance GR-21-01047 on October 11, 2021, alleging that, because he only had three teeth on top now (after the extractions), he was having problems chewing, and his gums hurt while eating. (Doc. 23-7 at 4). Fowler again requested a "partial plate" on top. *Id*. HSA Armstrong responded, "you have several teeth that require fillings, these have to be done first." *Id.* at 2. Fowler was instructed to place a sick call requesting that the fillings be done. *Id*.

On January 18, 2022, Fowler saw Dr. Bodeker and requested a dental prosthetic or a partial plate for the top of his mouth, noting that he was still having problems chewing and had lost weight. (Doc. 23-8). Dr. Bodeker told Fowler that he was already on the restorative list for teeth #3 and #13. *Id*. Although no sign of swelling, drainage, or acute infection was noted, and Fowler's teeth still appeared restorable, Dr. Bodeker offered to extract Fowler's remaining teeth and to have a complete denture fabricated. *Id*. Fowler rejected that option. *Id*.

Fowler was seen by Dr. Bodeker again on May 10, 2022, after stating, "I'm having problems chewing and have lost over forty pounds as a result thats after transferring to Grimes." (Doc. 23-8) (errors in original). During the visit, Fowler agreed to have teeth #3, #13, and #14 extracted. *Id.* Those teeth were extracted on July 5, 2022. (Docs. 23-8; 23-9).

On July 29, 2022, Fowler initiated grievance GR-22-00843, stating the following:

> I've wrote numerous sick calls pertaining dental issues. It's took over a year to pull seven teeth that were giving me pain and contributes to the factor of cruel and unusual punishment due to negligent behavior[.] The dental issues has been detrimental to my mental capacity and forcing me to say and do things that [] in pain or damaged self esteem person does which falls under mental health. I've had all my top teeth pulled and have choked on my food twice now due to not having dental prosthetics to aid the chewing ability[.] I wasn't giving no soft food scrip or anything in that area [] given the issue of proper diet. I'm having to eat things that ain't meeting my nutritional diet and lost 40 pounds or better due to this occurance. I was told that I was put on the fill in list after the guy I guess [] extracted the teeth which this violates my 4th Amendment and 8th Amendment profusely. I can't keep choking on food due to not having dental prosthetics.

(Doc. 23-12 at 6) (errors in original). HSA Armstrong responded to Fowler's grievance, noting that Fowler was seen on July 26, 2022, for this issue and was informed that he could get a script for pureed foods to help with his eating. *Id.* at 4. Fowler refused this offer. *Id.* at 4. Specifically, Fowler was informed as follows:

> You can place a sick call at the end of Aug requesting a denture. However, it can take up to a year to have it completed. The only option is to alter your diet, eat only the soft things on your tray. Stay away from the things that could cause you this issue. During Step One of this grievance process on 8/1/22 the Dental Assistant meet with you and this nurse, she listened to your complaint of not getting a soft food diet, she offered to speak to the Dentist and get an order for a Pureed diet, but you refused this assistance.

*Id.* (errors in original). Fowler appealed HSA Armstrong's decision to the Chief Deputy/Deputy/Assistant Director. *Id.* at 1. On October 13, 2022, after this lawsuit was

5

filed, Director Aundrea Culclager upheld the Medical Department's response and found Fowler's appeal to be without merit. *Id.*

Fowler last saw Dr. Bodeker on September 8, 2022, complaining that he was still having problems chewing. (Doc. 23-9). According to Dr. Bodeker's notes, "The patient had his last maxillary teeth extracted on 07/05/2022. The patient does not have enough time left on his TE date of 12/14/2022 to allow for denture fabrication. It was explained to the patient that he would only be eligible if he receives a year denial on his parole." *Id.* Fowler filed this lawsuit on September 28, 2022. (Doc. 2-1).

## III.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their Motion for Summary Judgment, Defendants argue that Fowler is unable to prove that they were deliberately indifferent to his serious medical needs. In response,[4] Fowler appears to argue: (1) a year was too long to wait for his dental issues to be treated; and (2) Dr. Bodeker used a local anesthesia without his consent, potentially causing him to relapse in his drug addiction.[5]

---

[4] Fowler's Motion for Verdict (Doc. 24) and his Response to Defendants' Motion for Summary Judgment (Doc. 26) are not notarized and do not comply with 28 U.S.C. § 1746. *See Zubrod v. Hoch*, 907 F.3d 568, 574–75 (8th Cir. 2018) ("[The] Federal Rule of Civil Procedure 56(c) and 28 U.S.C. § 1746 [prohibit] a court's consideration of an unsworn statement or declaration when deciding a motion for summary judgment unless it is signed, dated, and certified as true and correct under penalty of perjury.").

[5] Fowler first mentioned the alleged effect of anesthetics in a "Motion to Scope Discovery," (Doc. 15), which the Court docketed as a "Notice." In an Order dated October 24, 2023, the Court noted that Fowler's "Notice" was "disjointed and rambling, to the point of being indecipherable." (Doc. 16). To the extent Fowler sought to raise new constitutional claims regarding events that occurred after he filed this lawsuit, the Court instructed Fowler to file a new § 1983 action after he fully exhausted his administrative remedies. (Doc. 16).

Fowler's second claim regarding the anesthesia used during his dental procedures is not alleged in the Complaint, nor was it screened by the Court, and Defendants were given no notice of this additional claim. The Court notes that Fowler has not filed a motion to amend his Complaint to add this claim. To the extent Fowler's arguments in his Motion for Verdict (Doc. 24) and Response to Defendants' Motion for Summary Judgment (Doc. 26) can be construed as an embedded Motion to Amend the Complaint, that motion should be denied.[6] *See Thompson-El v. Jones*, 876 F.2d 66, 67–68 (8th Cir. 1989) (holding no abuse of discretion in denying motion to amend complaint filed after defendants' summary judgment motion; "grant of the motion most likely would have necessitated additional discovery and further delay" and would unduly prejudice the non-moving party). Thus, that claim will not be considered by the Court and may be more appropriately raised in a separate § 1983 action.

A.   **Standard of Review**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a

---

[6] Even if the Court were to consider this claim on the merits, Plaintiff offers no verifying medical evidence to suggest that he was harmed by the anesthesia used during his dental procedures, and any argument that the anesthesia may cause him to relapse in his drug addiction is speculative.

7

material dispute for trial by citing to particular parts of the materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" *See* FED R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### B.    Deliberate-Indifference Claims

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). To succeed on a deliberate-indifference claim for inadequate medical care, a plaintiff must allege and prove that: (1) he had objectively

8

serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 802 (8th Cir. 2022).

Objectively, there is no genuine dispute that Fowler pleaded a serious medical need. During Fowler's initial dental intake examination, fillings were recommended for seven teeth. (Doc. 23-2). It was further recommended that five teeth be extracted. *Id*. Three weeks later, Fowler began complaining that his teeth were "giving him problems" and that he was in severe pain. *Id*. Fowler was provided pain medication and put on the restoration and extraction lists. *Id.*; (Docs. 23-4, 23-5, 23-8, 23-9, 23-11, and 23-13). Moreover, Fowler told Defendants—on multiple occasions—that, because he had multiple teeth extracted, he was having difficulty eating and had lost over forty pounds. (Doc. 23-8); *see Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010) (holding that a medical need is "objectively serious" if it has been "diagnosed by a physician as requiring treatment, or was so obvious that a layperson would recognize the need for a physician's attention"); *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018); *see also Curtiss v. Benson*, 583 F. App'x 598, 599 (8th Cir. 2014) (holding, absent a showing of severe pain, difficulty chewing, and an inability to obtain adequate nutrition, there was insufficient evidence for a serious medical need); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (finding a viable inadequate-medical-care claim where a prisoner alleged he was denied care for bleeding and swollen gums).

"Under the subjective prong, to show deliberate indifference, the official must know of and disregard the inmate's serious medical need." *Presson v. Reed*, 65 F.4th 357, 367

(8th Cir. 2023) (cleaned up). It is well settled that negligence, gross negligence, or the mere disagreement with the course of medical care is not sufficient to state a deliberate indifference claim under the Eighth Amendment. *Luckert v. Dodge County*, 684 F.3d 808, 818–819 (8th Cir. 2012); *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) ("A showing of deliberate indifference is greater than gross negligence."). However, "[m]edical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care" violates the Eighth Amendment. *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (citations omitted); *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021); *Estelle*, 429 U.S. at 105. Deliberate indifference can also be shown by "intentionally delayed or denied access to medical care." *Allard*, 779 F.3d at 772 (citation omitted).

       **1.**    **Dr. Bodeker and DA Berg**

Liberally construing Fowler's pleadings, both sworn and unsworn, he alleges that Dr. Bodeker and DA Berg were deliberately indifferent to his serious medical needs by: (1) taking over a year to extract his teeth, leaving him in pain; and (2) failing to provide him with dentures after his teeth were extracted so that he could eat, which caused him to lose weight and affected his mental health. (Doc. 2-1 at 4–5). Defendants responded that Fowler is unable to show that they were deliberately indifferent to his serious medical needs, as the medical treatment Fowler received was "timely, adequate[,] and appropriate." (Doc. 22 at 5; Doc. 23-1 at ¶9).

Rarely does the Eighth Circuit find that inadequate dental care rises to the level of a constitutional violation absent "almost a complete lack of treatment leading to an infection or worsening condition." *Johnson v. Leonard*, 929 F.3d 569, 576–77 (8th Cir.

2019) (collecting cases). In *Johnson*, the Eighth Circuit held that an inmate plaintiff failed to show a jail dentist was deliberately indifferent, noting that plaintiff was seen each time he was placed on the dental list, and plaintiff was treated ten times over seventeen months. *Id.* Here, Fowler was seen nearly every time he requested a sick call; in fact, Fowler was seen at least eight times in a 14-month period.[7] Fowler received necessary and timely extractions, was seen regularly, and was prescribed medication to help with his pain. (Docs. 23-2, 23-4, 23-5, 23-6, 23-8, 23-9, 23-10, 23-11, and 23-13). Additionally, Fowler was offered a pureed diet when he complained that he could not chew, but he refused it. (Doc. 23-13).

Fowler was also repeatedly informed that he could only receive dentures or a dental prosthetic when all of his fillings and/or extractions were completed. *See* (Docs. 23-6, 23-7, and 23-8). Defendants provided a sworn affidavit from Theodore Kondos, D.D.S, a doctor of dental surgery, who attested that, "[i]t was appropriate to delay any dental prosthetic until all necessary repairs (fillings) and extractions were made. Once a prosthetic is fitted, subsequent dental work may cause the prosthetic to no longer fit properly increasing a patient's risk of infection, discomfort, and pain." (Doc. 23-1 at ¶ 9). Moreover, Dr. Kondos opined that, "the dental care and treatment provided to Mr. Fowler by Dr. Bodeker and the dental staff was appropriate, adequate, and timely." *Id.* at ¶ 10.

---

[7] Fowler was seen on: May 5, 2021; May 27, 2021; August 7, 2021; September 28, 2021; January 18, 2022; May 10, 2022; July 5, 2022; and July 26, 2022. (Docs. 23-2, 23-4, 23-5, 23-8, 23-9, 23-11, and 23-13). He had two additional sick calls that were answered through notes rather than visits because they only involved Fowler's requests for dentures. (Docs. 23-6 and 23-10).

Finally, Fowler has provided no verifying medical evidence to suggest that he was harmed by any alleged delay in his treatment. *Dulany v. Carnahan*, 132 F.2d 1234, 1242–43 (8th Cir. 1997) (finding that an "unsupported opinion is not sufficient to create a factual dispute" that prison officials were deliberately indifferent to a serious medical need). When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the seriousness of the deprivation should also be measured against the effect of the delay of treatment. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). To establish this, the inmate must provide "verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) (overruled on other grounds)).

"In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment." *Cejvanovic v. Ludwick*, 923 F.3d 503, 508 (8th Cir. 2019); *see also Fourte v. Faulkner Cnty.*, 746 F.3d 384, 390 (8th Cir. 2014) (finding no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner"). Failure to provide this medical evidence is "fatal" to the claim at the summary judgment stage. *Jennings v. Poynor*, No. 2:22-CV-00047-JM-ERE, 2024 WL 1421348 (E.D. Ark. Mar. 6, 2024) ("At the summary judgment stage, such an omission [of verifying medical evidence] is fatal to Mr. Jennings' medical deliberate indifference claim.").

Furthermore, the delay in treatment that forms the basis of this lawsuit was not so obvious that a lay person would recognize the need for medical intervention. *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999) (holding verifying medical evidence is only unnecessary where the medical need is "obvious" to even a layperson). Every time Fowler was examined, the medical notes state that there was no sign of "swelling, drainage, or acute infection" at the time of the examinations. (Docs. 23-2 and 23-8).

In sum, upon review of the record, the Court finds there is no dispute of material fact, and Dr. Bodeker and DA Berg are entitled to judgment as a matter of law on Fowler's deliberate-indifference claims.

### 2. HSA Armstrong

Fowler's only claim against HSA Armstrong is that, on August 29, 2022, she "enumerated my right[]s by concurring with medical maltreatment by [undecipherable] significant weight loss." (Doc. 2 at 4). Fowler does not mention HSA Armstrong in his Response to Defendants' Motion for Summary Judgment. *See* (Docs. 24, 26). Upon review of the record, the sole connection HSA Armstrong has to this case is that she responded to Fowler's grievances. This limited involvement in only the grievance procedure is insufficient to establish liability under § 1983. *See Rowe v. Norris*, 198 F. App'x 579, 580 (8th Cir. 2006); *Whitmore v. Ryals*, No. 4:20-CV-001255-LPR-PSH, 2021 WL 7627478, at *2 (E.D. Ark. Nov. 4, 2021), *report and recommendation adopted*, No. 4:20-CV-001255-LPR, 2022 WL 843510 (E.D. Ark. Mar. 21, 2022). To the extent that Fowler's vague allegations may be read to assert a claim that HSA Armstrong should be held liable in her supervisory capacity, that claim automatically fails based on the absence of any

13

underlying constitutional violation. *Engesser v. Fox*, 993 F.3d 626, 631 (8th Cir. 2021) (citation omitted).

## IV.    FOWLER'S MOTION FOR VERDICT

In his Motion for Verdict, Fowler asks that the Court "embrace[] a verdict blessing [his] claim with praising hands." (Doc. 24). Given the Court's recommendation that Defendants' Motion for Summary Judgment be granted, it is further recommended that Fowler's Motion for Verdict be denied.

## V.    CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 21) be GRANTED.

2. Fowler's Complaint (Doc. 2) be DISMISSED, with prejudice.

3. Fowler's Motion for Verdict (Doc. 24) be DENIED.

4. Judgment be entered accordingly.

DATED this 25th day of July, 2024.

_____
UNITED STATES MAGISTRATE JUDGE